```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                    Richmond Division




THE UNITED STATES OF AMERICA,

                                        Plaintiff,

          versus                              3:06 CR 387

LAMONT McCORD,

                                        Defendant




         Before:  HONORABLE RICHARD L. WILLIAMS
               United States District Judge




                    December 18, 2007

                   Richmond, Virginia




                 GILBERT F. HALASZ
               Official Court Reporter
                 U. S. Courthouse
               701 East Broad Street
                 Richmond, VA 23219
```

```
                         APPEARANCES



                  Peter S. Duffey, Esq.
             Assistant United States Attorney
                   For the United States




               Jeffery Lee Everhart, Esq.
               Theodore Daivd Bruns, Esq.
                   For the defendant
                     The Defendant
               In his own proper person
```

1           THE CLERK:  Case number 3:06 CR 387.

2           The United States of America versus Lamont E. McCord.

3           The United States is represented by Peter Duffey.

4           The defendant is represented by Jeffrey Everhart and

5     Theodore Bruns.

6           Are counsel ready to proceed?

7           MR. DUFFEY:  United States is ready, Your Honor.

8           THE COURT:  Proceed, Mr. Duffey.

9           MR. DUFFEY:  Good afternoon, Judge.

10          Your Honor, we are here for the sentencing of Lamont

11    E. McCord.

12          Mr. McCord pled guilty to counts one, two and three

13    of the superseding indictment on the morning of trial back

14    on September 24th, 2007.  The United States is ready to

15    go forward, has no objections or corrections to the

16    presentence investigation report.

17          Judge, I do have one witness that I would like to

18    call.

19          THE COURT:  All right.

20          This is a victim impact statement?

21          MR. DUFFEY:  It is, Judge.  I would like to call Ms

22    Simmons.  She would like to address The Court as well.

23          THE COURT:  You may proceed.

24          MR. DUFFEY:  I call Bernadine Simmons.

25                      BERNADINE SIMMONS

1            WAS SWORN AND TESTIFIED AS FOLLOWS:

2                       DIRECT EXAMINATION

3    BY MR. DUFFEY:

4    Q    Good afternoon, ma'am.

5    A    Good afternoon.

6    Q    If you would, state your full name, spell the last

7    name for the court reporter, please.

8    A    My name is Bernadine A. Simmons.  Last name is

9    S-I-M-M-O-N-S.

10   Q    Ms Simmons, you knew Michael Simmons; is that

11   correct?

12   A    Yes, I did.

13   Q    He is the victim in this case.

14   A    Yes.

15   Q    How do you know him?

16   A    He is my son.

17   Q    All right.

18        You were living in North Carolina at the time of his

19   death; correct?

20   A    Yes, I am.

21   Q    Can you explain to The Court how Michael's death has

22   affected you and your family?

23   A    I have prepared a statement to that effect that I

24   would like to read as a part of the record if that would

25   please The Court.

1 Q    Okay.

2      THE COURT:  You may proceed.

3      THE WITNESS:  To the Honorable Judge Williams,

4 officers of the court, participants, spectators, and

5 others.  I am here this afternoon to tell you how the

6 death of my son, my only child, has affected my life and

7 affected how I live.  Michael's death has been the most

8 profound occurrence in my life.  When I say "profound," I

9 mean that there is no experience even remotely close to

10 not having him in this life and not having him in my life.

11     I think about him every day.  That is every day.

12 That means not a day goes by without my son blazing in my

13 consciousness above everything else.  I see him on the

14 street, in the mall, driving a car, in the audience, on

15 television, some young man who resembles him, walks like

16 him, has a similar facial profile, and I hear him in the

17 crowd, in the store, on the radio.  Always when I least

18 expect it.  The pain always is with me.  Sometimes it is

19 so strong and acute that I think I am going to fall, and I

20 have to stop what I am doing and breathe slowly.  Other

21 times the tears are so thick in my eyes that my vision

22 gets clouded.  And if I am driving, I have to be very

23 careful, pause for a little while, I just can't see.

24     I am told by other parents who have lost a child that

25 I can expect it to be like this for the rest of my life.

1    So how has his murder affected me?  Since I haven't
2    been able to think of anything worse than losing my child
3    it has made me extremely intolerant of people who whine
4    and moan about their little problems, problems that I
5    consider inconveniences.  This has made me difficult to
6    deal with.  I am generally not politically correct.  I
7    don't like or want to be around foolish, stupid, or
8    ignorant people, regardless of who they are and what stage
9    they are in life.  No one can intimidate me.  I can't be
10   hurt by anybody or anything any more, and because I can't
11   change anything or anybody, I can only control me.
12        I have become a hermit.  I stay away from people.  I
13   don't socialize unless there is revenue to be made.  I am
14   an American, and I believe in revenue, and I have a small
15   business.
16        On a personal level I see very few personal close
17   friends.  I can count them on one hand.  I talk to them
18   even rarer.  I just want to be by myself.
19        There are days when I remember how difficult things
20   were for Mike growing up in Richmond, and I cry a great
21   deal.  His problem with drug addiction was not his fault.
22   A great deal of it was.  I don't deny that.
23        From the time he was a small child he has been
24   subjected to the ignorance of adults who refuse to treat
25   him as Mike.  They always treated him as Bernie Simmons'

1  son.  They saw that bull crap on television that I used to
2  do, and they expected Mike to be like that.  They never
3  were able to understand that I was doing a job, that that
4  was not my life.  There are too many examples of how Mike
5  was mistreated by ignorant teachers, counselors and
6  principals in the Richmond Public Schools, and at a noted
7  private school here in Richmond.  If I knew then what I
8  know now I would have moved us out of Virginia faster than
9  a speeding bullet.
10      There are days when I remember how much he tried to
11  get his life together, and I also remember how many bad
12  decisions he made, and I cry some more.  I know how many
13  times he detoxed on his own in our family room trying to
14  get his addiction under control.  I know how much he tried
15  to create a stable life with a steady job and how many
16  times he was let go from a job even though he performed
17  well.  He was let go because he was a felon.  I know how
18  much he tried.
19      His father, my ex-husband, died in January of 2002;
20  then months later Mr. McCord killed Mike.  Mike never got
21  over his dad's death.  It speeded up his fateful encounter
22  with Mr. McCord.
23      So finally, about the great Mike.  He was a gifted
24  barber.  He had an artist's eye for how things should go
25  together, and he was an excellent writer.  He was hard

1  working, very orderly, a place for everything and
2  everything in its place.  He was merry.  He dressed well
3  and he was neat with his person.  He was handsome and an
4  alpha male that females, blind, crippled or crazy, loved.
5  He knew how to conduct himself in all kinds of social
6  situations.  He could cook.  Bar-B-Que and steak were his
7  specialities.
8      He could sew.  Because he was a short man he learned
9  how to hem his own slacks to save money.
10     He and I were friends in addition to being mother and
11 son.  We genuinely liked each other.  Some of the best
12 experiences of him are when we would go shopping together.
13 That is when we talked about everything.
14     Mike's daughter, his Mary, here today.  She was two
15 years old when Mr. McCord killed him.  She won't remember
16 her father.  We will try to help her remember when she is
17 ready.
18     I would not be truthful if I didn't say that the
19 reptile part of my brain wants to leap across this room,
20 pull Mr. McCord's heart out, hand feed it to him.  That is
21 what the reptile part of my brain wants to do.  The human
22 part of my brain wants to just go away, because it knows
23 that nothing said or done here today will make a darn bit
24 of difference.  My son will still be dead.  I miss him.  I
25 am in pain all the time.  But so what?  The sun will

1   continue to shine.
2       There is no malice in me towards Mr. McCord.  I don't
3   want revenge, and justice is relative.  Mr. McCord will
4   spend time in jail, short or long, it doesn't matter.  I
5   am just sorry he couldn't find something else to do with
6   his life besides kill people and sell drugs.  It is such a
7   waste.
8       So how has his murdered affected me?  I am a
9   different person.  Living is deeply challenging for me.  I
10  have to work at it.  I am learning to live with the pain
11  of loss and I cope and get through my days.  There is no
12  joy.  I don't expect to find purpose or meaning, it is
13  just what it is.  All I know is I miss my son.
14      Thank you.
15  BY MR. DUFFEY:
16  Q   Ma'am, you brought a picture in with you today.
17  A   Yes, I did.
18  Q   Could I ask you to show that to Judge Williams and
19  describe it?
20  A   This was taken a year prior to his death in the fall
21  of 2001.  He is in Charlotte.  This is in our backyard.
22  That is his dog.  I still have the dog.  She is definitely
23  a young man's dog, not an old woman's.  He has just
24  finished raking the leaves and cleaning the yard.  Again,
25  this was the fall a year before his death.

1        THE COURT:  All right.

2        THE DEFENDANT:  One of my favorite pictures.

3    BY MR. DUFFEY:

4    Q    Finally, ma'am, you mentioned that Michael had a

5    young daughter at the time of his death, and she is here

6    today in the courtroom; is that correct?

7    A    Yes.

8    Q    She wrote a short note.  I would ask you to read it.

9    A    I don't have it with me.

10   Q    I have a copy.

11   A    She is seven years old.  She does not remember her

12   father, although she remembers his dog.  That may be

13   something there.

14        This is from Tyjasha.  Daddy, I have been worrying

15   about you because I want to call so you can be safe and

16   have some good food.  Love, Tyjasha.

17   Q    Anything else you would like to say?

18   A    I just would like to say as my statement, I have no

19   malice toward Mr. McCord.  Revenge is not part of it.

20   Justice, I don't care.  It is just all so sad.  It is just

21   profoundly and deeply sad.  This man is going to go to

22   jail for a long time, short time, it doesn't matter.  I

23   don't understand.  I don't understand why it has to be so

24   wasteful.  Just continues on and on.  I don't care how

25   long he goes to jail or not, because in the end it just

1   doesn't matter.  Nothing will change.  I am finished.
2   Q    All right.
3        Thank you, ma'am.
4        Any questions -- I don't think there are any other
5   questions.
6        THE COURT:  You don't have any questions, do you?
7        MR. EVERHART:  I don't, Your Honor.
8        THE COURT:  Mrs. Simmons, thank you for being with us
9   and sharing your feelings.
10       THE WITNESS:  Thank you.
11       MR. DUFFEY:  That is all the evidence I have, Judge.
12       THE COURT:  All right.
13       Mr. Everhart, come up to the lectern with your
14  client.
15       Do you care to allocute on behalf of your client?
16       MR. EVERHART:  Please.
17       THE COURT:  All right.  You may proceed.
18       MR. EVERHART:  Thank you, Your Honor.
19       May it please The Court, Your Honor, first on behalf
20  of Mr. Bruns and myself, and Lamont, who wishes to make a
21  statement at the appropriate time, we understand the loss
22  suffered by Mrs. Simmons and her family.  And we are
23  deeply sorry for her, understanding that is of no great
24  moment and doesn't help her, we still wish to express that
25  to her, and to Michael's daughter as well.

1          Judge, we come before you -- you have the presentence

2     report.  The Court, I hope, has reviewed the papers that

3     we filed on behalf of Mr. McCord, our position with

4     respect to interesting factors.

5          The Court has a wide range, and I think any and all

6     here would agree that even the minimum which is allowed at

7     this point is in essence a life sentence for Lamont

8     McCord.

9          Mr. McCord, as The Court may recall, this was set to

10    begin on a Monday.  That weekend Mr. McCord decided to

11    plead guilty.  His decision was no doubt influenced by the

12    fact that Miguel Morris decided that weekend he could

13    plead guilty and would cooperate against Mr. McCord.

14    Mr. McCord has been offered multiple opportunities prior

15    to that to be the first one in, shall we say.  For reasons

16    known only to Lamont he chose not to do that.

17         The Court recalls the plea agreement that Mr. McCord

18    signed and what that plea agreement called for.  Called

19    for Mr. McCord to cooperate truthfully with the

20    government.  Mr. McCord has, we believe, done that.  I

21    believe that the United States would agree with that.

22    Perhaps it might be said that Mr. McCord has been more

23    truthful than Mr. Morris regarding certain things,

24    including this case.

25         Nonetheless, the simple fact is that Lamont McCord

1   did what he pled guilty to.  He killed Mr. Simmons,
2   participated in drug dealing, and you see what the
3   guidelines say.  We do not know at this time, but we hope
4   that at some point we may return before this court.  If
5   that happens, then we will address that at the appropriate
6   time.  But we would ask you, Your Honor, as we ask or
7   suggested, I should say, in the papers we filed on
8   December 11, we would ask you to fix his sentence to a
9   term of years as opposed to life plus.  I suppose it is a
10  distinction without a difference in many respects.  But we
11  would ask you to consider doing that.  The minimum term of
12  years which can be imposed is 600 months.  That is 50
13  years.  On top of that the ten years for the 924(c) count.
14  We would ask you to -- pardon me, it is 480 plus the 120.
15  360.  It was 360 to life.  We have the enhancement, so it
16  makes it 480 to life.  And then plus the ten on top.  So I
17  misspoke.  It is 600 months is the minimum term that can
18  be imposed.  We would ask you to consider imposing that 50
19  year sentence.
20          As I said, Your Honor, Mr. McCord wishes to make a
21  statement.
22          THE COURT:  At this stage of the proceedings I am
23  required to give you an opportunity to address The Court.
24  I want you to call to my attention anything that you think
25  will be helpful to you before I pass sentence on you.

1        You may now proceed.

2        THE DEFENDANT:  First of all, I want to apologize to
3   Mrs. Simmons.  Even though Mike had an addiction, he was a
4   friend of mine.  And that don't justify what happened.  I
5   want to also apologize to his daughter because I know how
6   it feels.  I lost -- lost a child myself in 2001 to a
7   mother.  So a lot of ignorance plays a part in this case.
8   And I would like to apologize to everybody affected by it,
9   including my family as well.

10       Now I would like to apologize to The Court.

11       THE COURT:  Do you have some family members present?

12       THE DEFENDANT:  Yes, sir.

13       THE COURT:  I will ask the Marshals to give you an
14  opportunity to visit with them before you go back to
15  prison.

16       Anything else that you want to say?

17       THE DEFENDANT:  No, sir.

18       THE COURT:  Will you submit it on the record as made,
19  Mr. Duffey?

20       MR. DUFFEY:  Judge, I will.  Just one caveat, if I
21  could, Judge.  I would point out the guidelines -- I know
22  they are advisory -- but A 1 tells the court the
23  appropriate sentence is life.  He is cooperating, but we
24  are not at that point today, Judge --

25       THE COURT:  All right.

1          MR. DUFFEY:  -- for The Court to follow that
2     recommendation.
3          THE COURT:  All right.
4          Pursuant to title 18 United States Code section 3553
5     and the Sentencing Reform Act of 1984 I sentence
6     Mr. McCord to a total term of imprisonment of 540 months,
7     consisting of 360 months imprisonment on count one and 240
8     months of imprisonment on count three, to run
9     concurrently, and 180 months of imprisonment on count two
10    to run consecutively to counts one and three.  This term
11    of 540 months of imprisonment shall run consecutively to
12    the sentence imposed in February of 2007 in criminal case
13    number 3:06 CR 00264.
14         In addition, he shall pay a special cost assessment
15    of a hundred dollars for each count, resulting in a total
16    of $300, for the benefit of the Crime Victim's Fund.
17         Upon release from prison, he shall be placed on
18    supervised release for a period of six years on count one,
19    five years on count two, and three years on count three,
20    to be served concurrently.  Within 72 hours of release
21    from custody he is to report in person to the probation
22    office in the district to which he is released.  While on
23    supervised release he shall not commit any federal, state,
24    or local crimes, shall be prohibited from possessing a
25    firearm or other dangerous device, and shall not illegally

Case 3:06-cr-00387-REP   Document 195   Filed 03/15/21   Page 16 of 18 PageID# 826

16

1   posses a controlled substance.  In addition, he shall
2   comply with the standard conditions of supervised release.
3   He shall also comply with the following special
4   conditions.  He shall participate in a program approved by
5   his probation officer for substance abuse, which program
6   may include residential treatment and testing to determine
7   whether he has reverted to the use of drugs or alcohol.
8   Cost of these programs and testing are to be paid for by
9   the defendant.  He also shall participate in a program
10  approved by his probation officer for mental health
11  treatment, and to include anger management.  And the cost
12  of these programs are to be paid for by the defendant.
13       He also shall provide his probation officer access to
14  any requested financial information.  I have considered
15  the defendant's net worth and liquid assets, his life
16  style and financial needs and so forth, and find that he
17  is not capable of paying a fine.  The court also finds
18  that there is no identifiable victims requiring
19  restitution at this time, but that does not preclude
20  anyone who feels they are entitled to restitution from
21  filing the appropriate paper work in the future, and The
22  Court will rule on it at that time.  But as of now there
23  is no information before me that would result in any
24  restitution.  I also adopt the presentence report without
25  change, and find that the sentence imposed is fair and

1   reasonable, and is within the advisory guideline range,
2   which in the exercise of judicial discretion was found to
3   be consistent with the requirements of title 18 U.S.C.
4   section 3553(a).
5        Mr. McCord, while I understand that you have waived
6   your right to appeal The Court's sentence, you may not
7   have waived your right to appeal any alleged
8   Constitutional violations that you think occurred while
9   the case against you was being processed.  If you elect to
10  exercise your right to appeal any such alleged violations
11  you would have ten days from today to do so.  You also
12  will be given credit for time served to date pursuant to
13  title 18 United States Code section 3585.  And I recommend
14  that you be housed in a facility as near your family as
15  possible, and that you participate in the BOP's 500 hour
16  intensive residential substance abuse treatment program,
17  participate in mental health treatment, and receive
18  vocational training while you are incarcerated.
19       I now remand you to the custody of the Attorney
20  General for execution of your sentence, and I wish you
21  well until in the future, and hope that the Marshals will
22  give you little time to visit with your family before you
23  go back to the facility where you are serving your time.
24  I also recommend that you be housed in a facility near
25  your family.

1     MR. EVERHART:  Thank you, Your Honor.

2     THE COURT:  What time tomorrow?

3     THE CLERK:  10:00 o'clock.

4             HEARING ADJOURNED

5

6     Certified true and correct transcript.

7

8         Gilbert Frank Halasz, RMR

9          Official Court Reporter